NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHINEDU IBRAHIM ALI,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>CITY OF NEWARK, THE STATE OF NEW JERSEY, and THE ADMINISTRATIVE OFFICE OF THE COURTS OF NEW JERSEY,<br><br>　　　　　Defendants. | Civil Action No.: 15-8374 (JLL) (JAD)<br><br>**OPINION** |

**LINARES**, District Judge.

This matter comes before the Court by way of the Motions to Dismiss filed by Defendant City of Newark ("the City" or "Newark") (ECF No. 16) and Defendants State of New Jersey and Administrative Office of the Courts of New Jersey (jointly "the State Defendants") (ECF No. 27) under Federal Rule of Civil Procedure 12(b)(6). The Court has considered the parties' submissions and decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court denies the Motions to Dismiss.

**FACTUAL BACKGROUND**[1]

Plaintiff Chinedu Ibrahim Ali is a deaf individual who communicates primarily in American Sign Language ("ASL"). (ECF No. 13 ("Am. Compl.") ¶ 1.) ASL is Plaintiff's "expressed, preferred, and most effective means of communication." (*Id.*) In this action, Plaintiff

---

[1] This background is derived from Plaintiff's Amended Complaint, which the Court must accept as true at this stage of the proceedings. *See Winer Family Trust v. Queen*, 503 F.3d 319, 327 (3d Cir. 2007).

alleges that Defendants discriminated against him by failing to provide him with a sign language interpreter during two court hearings at the Newark Municipal Court. (*Id.*)

On July 2, 2015, Plaintiff received a citation for driving without a functioning headlight. (*Id.* ¶¶ 12, 13.) While Plaintiff paid the fine online, he was alerted that he had two other outstanding traffic tickets from Newark, New Jersey, of which he was unaware. (*Id.* ¶¶ 14-17.) Plaintiff called Newark Municipal Court and was advised that he could attend a hearing on July 21, 2015 to contest the tickets. (*Id.* ¶ 21.) Plaintiff advised the unidentified woman with whom he was speaking that he was deaf, and he requested an interpreter for the hearing. (*Id.* ¶ 22.) The woman responded that she would note that an interpreter would be needed on July 21, 2015. (*Id.* ¶ 23.)

Plaintiff was not provided with an interpreter on July 21, 2015. Plaintiff arrived at Newark Municipal Court on July 21, 2015 approximately thirteen minutes before the start of the hearing in order to meet the interpreter. (*Id.* ¶ 24.) Plaintiff was told by a court officer that an interpreter would arrive and that he should have a seat and wait. (*Id.* ¶ 25.) No interpreter appeared and Plaintiff became "nervous, frustrated, and confused because he could not understand any announcements being made and there was no one to assist him." (*Id.* ¶ 27.) At 6:15 PM, a court clerk asked Plaintiff his name but Plaintiff told the clerk that he could not understand because he is deaf. (*Id.* ¶¶ 29, 30.) Shortly thereafter, the judge asked Plaintiff to approach, and Plaintiff signaled to the Judge that he was deaf and could not understand her. (*Id.* ¶¶ 31, 32.) The judge and court officer conferred, but Plaintiff could not understand the communication and he repeatedly stated that he is deaf and could not understand any of the communications by the judge to him. (*Id.* ¶¶ 33, 34.) The court officer then wrote down the words "guilty" and "not guilty" on

paper and showed the document to Plaintiff, evidently asking Plaintiff to point to one or the other. (*Id.* ¶ 35.) Plaintiff objected on the grounds that he was not being provided a fair opportunity to understand the charges and effectively communicate with the court. (*Id.* ¶ 36.) Plaintiff alleges that that the judge became aggravated and stated: "That's a lie! You can hear me!" (*Id.* ¶ 37.) Plaintiff responded by stating, "I am not lying, I am deaf." (*Id.* ¶ 38.) Plaintiff was advised to come back to court on August 7, 2015.

Plaintiff returned to Newark Municipal Court on August 7, 2015, but again was not provided an interpreter. (*Id.* ¶ 40.) Plaintiff wrote a note to a court officer named Vasquez asking him if an interpreter was coming and Vasquez responded by saying, "Pay attention and listen" and "I know you can hear." (*Id.* ¶ 41.) Plaintiff sat in the courtroom for three hours without an interpreter or any services to help him effectively communicate with court staff. (*Id.* ¶ 42.) Plaintiff took the stand without an interpreter. (*Id.* ¶ 43.) The prosecutor dismissed the case. (*Id.*)

Plaintiff alleges that he was "ignored, humiliated and treated with discrimination and deliberate indifference by Defendants" and that "Defendants' actions resulted in Plaintiff being irretrievably denied the complete understanding of the court proceedings." (*Id.* ¶¶ 44, 45.) Plaintiff states that he "experienced shame, anxiety, frustration, emotional distress, fear and discrimination." (*Id.* ¶ 46.) Plaintiff alleges that "Defendants' willful, knowing and repeated acts of intentional discrimination against Plaintiff evinces a pattern and practice of discrimination that caused Plaintiff to suffer emotional pain and anguish" and denied him access to the court and a meaningful opportunity to be heard. (*Id.* ¶¶ 48, 49.)

## **PROCEDURAL HISTORY**

Plaintiff commenced this action on November 25, 2015 against the City of Newark and Newark Municipal Court. (ECF No. 1.) On January 8, 2016, the City of Newark and Newark Municipal Court moved to dismiss the complaint, which was denied as moot after Plaintiff timely filed an Amended Complaint on February 2, 2016. (ECF No. 15.)

The Amended Complaint removes Newark Municipal Court as a Defendant, and names the City of Newark, the State of New Jersey, and the Administrative Office of the Courts of New Jersey as Defendants. (*See* Am. Compl.) The Amended Complaint sets forth three causes of action: violation of Title II of the Americans With Disabilities Act, 42 U.S.C. § 12112, *et seq.* ("ADA") against all Defendants (Count 1); violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 701, *et seq.* ("RA") against all Defendants (Count 2); and New Jersey Law Against Discrimination, N.J.S.A. 10:15-1, *et seq.* ("NJLAD") against the City of Newark only (Count 3). Plaintiff seeks both equitable and monetary relief. With respect to equitable relief, Plaintiff seeks a declaratory judgment that Defendants subjected him to unlawful discrimination and he seeks to enjoin Defendants from "implementing or enforcing any policy, procedure, and/or practice that denies deaf or hard of hearing individuals meaningful access to and full and equal enjoyment of Defendant's [sic] facilities, services or programs" and requests that the Court order Defendants, among other things, to "develop, implement, promulgate, and comply with a policy prohibiting future discrimination against Plaintiff or other deaf or hard of hearing individuals by failing to provide effective communication." (*See* Am. Compl. at 10-11, ¶¶ a, b, c.) Plaintiff further requests

compensatory and punitive damages[2] and reasonable costs and attorneys' fees. (*Id.* ¶ d.)

On February 11, 2016, the City of Newark filed a Motion to Dismiss the Amended Complaint. (*See* ECF No. 16-2 ("Newark Mov. Br.").) On March 7, 2016, Plaintiff filed opposition (ECF No. 18 ("Opp. Newark Br.")) and the City replied on March 14, 2016 (ECF No. 21 ("Newark Reply Br.")). On March 23, 2016, in response to a letter from Plaintiff, the Court held in abeyance a decision on Newark's Motion to Dismiss to allow time for the State Defendants to answer or otherwise move. (ECF No. 26.) On March 31, 2016, the State Defendants filed a Motion to Dismiss the Amended Complaint. (*See* ECF No. 27-1 ("State Mov. Br.").) On May 2, 2016, Plaintiff filed opposition to the State Defendants' Motion to Dismiss. (ECF No. 29 ("Opp. State Br.").) Also on May 2, 2016, the United States of America filed a Statement of Interest, pursuant to 28 U.S.C. § 517, arguing that Plaintiff had sufficiently stated a claim. (ECF No. 30 ("USA Br.").) On May 9, 2016, the State Defendants filed a reply in further support of their Motion to Dismiss (ECF No. 33 ("State Reply Br.")), and, in accordance with this Court's Order, the City filed a reply to address the arguments raised subsequent to their briefing. (ECF No. 34 ("Newark Supp. Br.").) The matter is now ripe for resolution.

## LEGAL STANDARD

To withstand a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows

---

[2] Punitive damages are sought under the NJLAD against Defendant City of Newark only.

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

To determine the sufficiency of a complaint under *Twombly* and *Iqbal* in the Third Circuit, the court must take three steps: first, the court must take note of the elements a plaintiff must plead to state a claim; second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (citations omitted). Stated differently, the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Grp. Against Smog & Pollution, Inc. v. Shenango Inc.*, 810 F.3d 116, 127 (3d Cir. 2016) (quoting *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014)) (internal quotation and marks omitted).

The Court's role is not to determine whether the non-moving party "will ultimately prevail" but whether that party is "entitled to offer evidence to support the claims." *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 302 (3d Cir. 2011). The Court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64. "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v.*

*Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## ANALYSIS

### A. The Statutes at Issue

Plaintiff seeks relief under the ADA, the RA, and the NJLAD. In this section, the Court discusses the necessary elements, followed by the available relief.

1. <u>Required Elements</u>

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.[3] The ADA defines "public entity" to include "any State or local government," *id.* § 12131(1)(A), and additionally includes "any department, agency, special purpose district, or other instrumentality of a State or . . . local government," *id.* § 12131(1)(B).

Similarly, under the RA, "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving

---

[3] The regulation implementing Title II of the ADA states that a public entity shall "[a]fford a qualified individual with a disability an opportunity to participate in or benefit from . . . [a] service that is equal to that afforded others." 28 C.F.R. § 35.130(b)(ii). To that end, "[a] public entity shall furnish appropriate auxiliary aids and services where necessary to afford qualified individuals with disabilities, including applicants [and] participants . . . an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." 28 C.F.R. § 35.160(b)(1). The term "auxiliary aids and services" under the regulation implementing Title II includes "real-time computer-aided transcription services" as well as "voice, text, and video-based telecommunications products and systems." 28 C.F.R. § 35.104. In making the determination of what auxiliary aids and services to provide, public entities are required to consider various factors, such as context, complexity, and the communication methods of the individual. 28 C.F.R. § 35.160(b)(1)-(2). Although public entities are required to "give primary consideration to the requests of individuals with disabilities" when "determining what types of auxiliary aids and services are necessary," 28 C.F.R. § 35.160(b)(2), public entities are not required to take any action that would result in a fundamental alteration or an undue burden. 28 C.F.R. § 35.164. Defendants do not assert these defenses here.

Federal financial assistance[.]" 29 U.S.C. § 794(a).[4] For purposes of the RA, "program or activity" means "all of the operations of . . . a department, agency, special purpose district, or other instrumentality of a State or local government" or "the entity of such State or local government that distributes such [federal] assistance and each such department or agency (and each other State or local government entity) to which the [federal] assistance is extended, in the case of assistance to a State or local government[.]" *Id.* § 794(b)(1).

Likewise, under the NJLAD, it is "unlawful discrimination" for "any owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation directly or indirectly to refuse, withhold from or deny to any person any of the accommodations, advantages, facilities or privileges thereof, or to discriminate against any person in the furnishing thereof . . . on account of . . . disability." N.J.S.A. § 10:5-12(f)(1); *see also id.* § 10:5-4 ("All persons shall have the opportunity . . . to obtain all the accommodations, advantages, facilities, and privileges of any place of public accommodation . . . without discrimination because of . . . disability . . . , subject only to conditions and limitations applicable alike to all persons. This opportunity is recognized as and declared to be a civil right.") The parties do not dispute that Newark Municipal Court is a "place of public accommodation" within the meaning of the NJLAD. *See State v. P.E.*, 284 N.J. Super. 309, 316 (Ch. Div. 1994) (noting that under NJLAD "the courts are required to ensure equal access").

To prevail on a claim under any of these statutes, a plaintiff must prove that he "'(1) has a disability; (2) was otherwise qualified to participate in a [public] program; and (3) was denied the

---

[4] In general, "the same legal principles govern ADA and RA claims." *CG v. Pennsylvania Dep't of Educ.*, 734 F.3d 229, 235 (3d Cir. 2013) (citation omitted). However, to state a claim under the RA, the plaintiff must demonstrate that the "allegedly discriminating entity receives federal funding" and also demonstrate that there is no "alternative cause" to the discrimination beyond plaintiff's disability. *Id.* at 235 n.10, 236 n.11.

8

benefits of the program or was otherwise subject to discrimination because of [his] disability.'" *Stone v. New Jersey Admin. Office of the Courts*, 557 F. App'x 151, 153-54 (3d Cir. 2014) (quoting *Chambers ex rel. Chambers v. School Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 189 (3d Cir. 2009)). In *Stone*, the Third Circuit specifically noted that claims under the ADA and RA must satisfy the above elements, *id.*, and further held that "[b]ecause the NJLAD 'relies on the same analytical framework' as the ADA, claims under it can be addressed alongside those under the ADA." *Id.* at 154 (quoting *McNemar v. Disney Store, Inc.*, 91 F.3d 610, 618 (3d Cir. 1996)).

2. Remedies and Relief

To receive compensatory damages under the ADA and RA (as opposed to merely equitable relief), a plaintiff must additionally establish intentional discrimination. *See Williams v. Hayman*, 657 F. Supp. 2d 488, 503 (D.N.J. 2008) ("In general, courts have held that compensatory damages are available to plaintiffs asserting claims under Title II of the ADA, but only where it is shown that the discrimination was intentional.") (citation omitted). Intentional discrimination may be established with a showing of "deliberate indifference." *S.H. v. Lower Merion Sch. Dist.*, 729 F.3d 248, 263 (3d Cir. 2013). "To satisfy the deliberate indifference standard, [a plaintiff] must present evidence that shows both: (1) *knowledge* that a federally protected right is substantially likely to be violated . . . , and (2) *failure to act* despite that knowledge." *Id.* (citing *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001)). In *Duvall* the Ninth Circuit held that "a failure to act must be a result of conduct that is more than negligent, and involves an element of deliberateness." *Id.* "Because in some instances events may be attributable to bureaucratic slippage that constitutes negligence rather than deliberate action or inaction, we have stated that deliberate indifference does not occur where a duty to act may simply have been overlooked, or a complaint may

9

reasonably have been deemed to result from events taking their normal course." *Id.*

With respect to damages under the NJLAD, "[a]ll remedies available in common law tort actions shall be available to prevailing plaintiffs." N.J.S.A. § 10:5-13. This includes both compensatory and punitive damages. *See Cavuoti v. New Jersey Transit Corp.*, 161 N.J. 107, 133, (1999). However, punitive damages are available only in "exceptional cases" where plaintiff demonstrates that defendant "displayed actual malice or acted in a willful and wanton manner." *Victor v. State*, 401 N.J. Super. 596, 619 (App. Div. 2008), *aff'd as modified*, 203 N.J. 383 (2010) (citations omitted).

### B. Plaintiff Has Sufficiently Demonstrated a Plausible Claim to Relief

When accepting all factual allegations in the Amended Complaint as true and construing them in a light most favorable to Plaintiff, the Court finds that Plaintiff has sufficiently stated a claim under all three statutes sufficient to survive the instant motions to dismiss. In short, Plaintiff has sufficiently alleged that he was denied equal opportunity to participate in his judicial proceedings due to his disability. (*See generally* Am. Compl. ¶¶ 11, 22, 26, 30-32, 34-37, 40-43.) Furthermore, when construing the Amended Complaint in a light most favorable to Plaintiff, the Court finds that Plaintiff has sufficiently alleged that the discrimination was intentional. (*Id.*)

The crux of the issue presented by the motions to dismiss is who is ultimately responsible for disability discrimination in a municipal court, including whether respondeat superior applies. The law in this area appears to be unsettled, and issues of fact pervade the arguments set forth by the City and the State Defendants.

The distinction between municipal and state control of municipal courts is unclear for purposes of establishing liability for disability discrimination. On the one hand, the City of

Newark is responsible for the establishment of the Newark Municipal Court and administrative functionality.[5] However, at the same time, each municipal court is clearly subject to the overarching control of the State's court system.[6] Thus, the overlap between judicial and administration function at the Newark Municipal Court related to provision of interpreter services appears to be an issue of fact at the core of this case.

The City argues that the Newark Municipal Court is a distinct entity from the City, subject to the control of the State Defendants, such that the City cannot be held liable. (*See* Newark Mov. Br. at 16-19; Newark Supp. Br. at 7-14.) In contrast, the State Defendants argue that the City alone is responsible for providing interpreters in Newark Municipal Court, and that the State Defendants cannot be held vicariously liable for the actions of Newark Municipal Court employees. (*See* State Mov. Br. at 5-15.) And while the State Defendants "assume without conceding that employers can be vicariously liable for their employees' ADA and RA violations," (State Mov. Br. at 11), the City argues that application of respondeat superior principles would undermine the objectives of the statutes. (*See* Newark Reply Br. at 8-10.)

Furthermore, with respect to sovereign immunity, the State Defendants acknowledge that Title II of the ADA is a "valid abrogation of the State Defendants' sovereign immunity 'as it applies to the class of cases implicating the accessibility of judicial services.'" (State Mov. Br. at

---

[5] *See* N.J.S.A. § 2B:12-1(a) ("Every municipality shall establish a municipal court."); *id.* § 2B:12-10(a) (requiring municipalities to "provide for an administrator and other necessary employees for the municipal court and for their compensation"); *id.* § 2B:12-7 ("[J]udges of municipal courts shall be paid annual salaries set by ordinance or resolution of the . . . municipalities establishing the court.").

[6] *See Ferrara v. Seaside Heights Borough*, No. A-0336-09T3, 2010 WL 2346545, at *2 (N.J. Super. Ct. App. Div. June 7, 2010) ("While established by a municipality in accordance with the statutory mandate to do so, once constituted, a municipal court becomes part of the Judiciary subject to the Supreme Court's rules and policies. . . . Municipal courts are part of the Judicial Branch as inferior courts of limited jurisdiction, and, constitutionally, are under the exclusive and plenary authority of the State Supreme Court.") (citations omitted); *Squeo v. Borough of Carlstadt*, 296 N.J. Super. 505, 512 (App. Div. 1997) (noting that "[t]he municipal court and its personnel are an integral part of the judicial system, not of municipal government").

6 n.3 (citing *Tennessee v. Lane*, 541 U.S. 509, 531 (2004); 42 U.S.C. § 12202).) In contrast, while the City acknowledges that it "is not entitled to assert sovereign immunity," it nevertheless raises the issue on behalf of the State Defendants and the Newark Municipal Court, and argues that sovereign immunity applies with respect to the ADA and NJLAD. (*See* Newark Supp. Br. at 14-25.) The Court further notes that the State Defendants explicitly reserved on the right to argue sovereign immunity with respect to the RA. (State Mov. Br. at 6-7 n. 3 (citations omitted).)

It is premature for the Court to determine at this stage who is ultimately responsible for either the implementation or the setting of policy under the ADA, RA, and NJLAD in the Newark Municipal Court, the extent to which the Newark Municipal Court is "independent" from the City or the State Defendants for purposes of liability, and whether sovereign immunity applies. The issues presented are novel, nuanced, and fact-intensive, and neither the City nor the State Defendants has convinced the Court one way or the other on the issues at this stage.[7] At bottom, the Court is satisfied that Plaintiff has sufficiently alleged a plausible violation of the ADA, RA, and NJLAD, and he has asserted the claims against multiple defendants consistent with Fed. R. Civ. P. 20. Discovery is needed to aid the Court in determining the degree of control over the policy and the staff implementing it at the Newark Municipal Court. To be clear, the Court has no opinion on whether Plaintiff "will ultimately prevail" on his claims, but simply finds that the Amended Complaint sufficiently shows a plausible claim to relief such that Plaintiff is "entitled to offer evidence to support the claims." *United States ex rel. Wilkins*, 659 F.3d at 302. Accordingly, the Court will deny the Motions to Dismiss and revisit the issues raised in due course.

---

[7] Notwithstanding the submission of documents in support of the Motions to Dismiss. (*See* ECF No. 16-3 and accompanying exhibits; ECF Nos. 27-2, 27-3, 27-4, 27-5.)

## CONCLUSION

For the reasons above, the Court denies the Motions to Dismiss. An appropriate Order accompanies this Opinion.

DATED: May 25, 2016

JOSE L. LINARES
UNITED STATES DISTRICT JUDGE