**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |
|---|
| CHINEDU IBRAHIM ALI, |
| Plaintiff, |
| v. |
| CITY OF NEWARK, *et al.*, |
| Defendants. |

Civil Action No. 15-8374 (JLL)

**OPINION**

**LINARES**, Chief District Judge.

This matter comes before the Court by way of Defendants the State of New Jersey and the Administrative Office of the Courts of New Jersey's ("State Defendants") Motion for Summary Judgment, (ECF No. 76), and Defendant the City of Newark's ("City Defendant") Motion for Summary Judgment, (ECF No. 77). Both motions are brought pursuant to Federal Rule of Civil Procedure 56. (ECF Nos. 76, 77). Plaintiff Chinedu Ibrahim Ali has filed opposition to both motions, (ECF Nos. 86, 87), and Defendants have replied thereto, (ECF Nos. 90, 92). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated herein, State Defendants' Motion is granted, and City Defendant's Motion is denied.

## I.     BACKGROUND[1]

Plaintiff is a deaf individual who primarily communicates in American Sign Language ("ASL"). (St. Defs. SMF ¶ 1). On July 2, 2015, Plaintiff received a traffic citation in Fanwood, New Jersey. (St. Defs. SMF ¶ 3). Upon going online to pay the Fanwood ticket, Plaintiff discovered that he had two outstanding tickets from Newark, New Jersey that were issued in June 2015. (St. Defs. SMF ¶ 4). Through a relay service provided by the "Sprint Mobile IP" application, Plaintiff contacted the Newark Municipal Court and indicated that he wanted a hearing for the two tickets, because he did not know why the tickets were issued. (St. Defs. SMF ¶¶ 6–8). The representative for the Newark Municipal Court, Ms. Charisse Jones, told Plaintiff that his hearing was scheduled for July 21, 2015 at 4:00 p.m. (St. Defs. SMF ¶ 9). Plaintiff informed Ms. Jones that he is deaf and required an ASL interpreter for the hearing. (St. Defs. SMF ¶ 10). In line with the appropriate protocol, Ms. Jones typed "interpretor [sic] required (hearing impaired)" into the case notes associated with Plaintiff's two tickets so a municipal court administrator can secure an interpreter before the hearing. (St. Defs. SMF ¶¶ 11–12).

However, Ms. Sandra Henderson, the municipal court administrator assigned to the Judge presiding over Plaintiff's hearing, did not look at the case notes and was not otherwise notified that an ASL interpreter was needed. (St. Defs. SMF ¶¶ 21–22). Ms. Henderson admitted that she did not usually review the case notes for a first appearance, because "97 percent of the time there's nothing there." (St. Defs. SMF ¶ 22). On July 21, 2015 at 3:47 p.m., Plaintiff arrived at the Newark Municipal Court and, after failing to find an interpreter, approached a courtroom officer

---

[1] This background is taken from the parties' statements of material facts, pursuant to Local Civil Rule 56.1. (ECF No. 76-2, State Defendants' Rule 56.1 Statement of Facts ("St. Defs. SMF"); ECF No. 79, City Defendant's Rule 56.1 Statement of Facts ("Ct. Def. SMF"); ECF Nos. 86, 87, Plaintiff's Response to Defendants' Statements of Fact and Supplement; and ECF Nos. 90-1, 92-2, Defendants' Replies to Plaintiff's Supplemental Facts). To the extent that Plaintiff admits to any Material Facts as stated by Defendants, the Court will cite only to "St. Defs. SMF" and the relevant paragraph number.

named George Vazquez. (St. Defs. SMF ¶ 14). Plaintiff advised Officer Vazquez that he is deaf and asked where the ASL interpreter was. (St. Defs. SMF ¶ 15). Officer Vazquez directed Plaintiff to sit and wait while he searched for an interpreter. (St. Defs. SMF ¶ 16). Plaintiff remained seated in the courtroom for two hours without any update as to the interpreter or his hearing. (St. Defs. SMF ¶ 17).

At 6:15 p.m., a court clerk approached Plaintiff and asked for his name, but Plaintiff could not understand her. (St. Defs. SMF ¶ 18). After Plaintiff showed the clerk his tickets, Plaintiff was directed to approach Municipal Judge Vanessa Williams-Powell. (St. Defs. SMF ¶ 19). Judge Williams-Powell learned that Plaintiff was deaf after Plaintiff pointed to his right ear to signal that he could not understand her, and a court officer told the judge that Plaintiff was deaf. (St. Defs. SMF ¶ 20). Upon realizing that Plaintiff was deaf, and because no interpreter was present, Judge Williams-Powell adjourned Plaintiff's hearing to August 7, 2015 at 4:00 p.m. (St. Defs. SMF ¶¶ 23, 28). Both Officer Vazquez and Ms. Henderson testified that it is appropriate procedure for a hearing to be adjourned when a party requests an interpreter, but none are available that day. (St. Defs. SMF ¶¶ 24–25).

After the hearing was adjourned, Officer Vazquez wrote the words "guilty" and "not guilty" on a piece of paper and showed it to Plaintiff, who then pointed to "not guilty." (St. Defs. SMF ¶ 26). Officer Vazquez subsequently asked Plaintiff to sign a "Hudson Notice," which is an acknowledgment that the party understands their right to be present at all stages of a trial and the party's obligation to be present for any scheduled conference or stage of the trial. (St. Defs. SMF ¶ 27). Plaintiff refused to sign the Hudson Notice and stated that he has "to have an interpreter with [him] before [he] sign[s] the paper." (St. Defs. SMF ¶ 29). Upon hearing Plaintiff's statement, Judge Williams-Powell told Plaintiff "[i]f you can read, you can sign [the Hudson

3

Notice]," and "[the interpreter] is not going to interpret something that is in writing, that you can read." (St. Defs. SMF ¶ 29). Officer Vazquez wrote "refused to sign" on the Hudson Notice and handed it to Plaintiff. (St. Defs. SMF ¶ 28).

At some point during or after the July 21, 2015 proceeding, Ms. Henderson wrote and highlighted the word "deaf" on a document associated with Plaintiff's file to ensure that she remembered to obtain an ASL interpreter for the next hearing. (St. Defs. SMF ¶ 30). Though the Newark Municipal Court's exact procedure for obtaining an interpreter back in 2015 is contested by the parties, (St. Defs. SMF ¶ 31; ECF No. 87-1 ¶ 31), it is undisputed that Ms. Henderson failed to arrange for an interpreter for Plaintiff's August 7, 2015 hearing. (St. Defs. SMF ¶ 32). Ms. Henderson claims her failure to obtain an interpreter was "purely an oversight." (St. Defs. SMF ¶ 32). After the July 21, 2015 proceeding, Plaintiff used the "Sprint Mobile IP" application to call the Newark Municipal Court and arrange for an ASL interpreter. (St. Defs. SMF ¶ 34). Like his original call to Newark Municipal Court, Plaintiff's request for an interpreter for his August 7, 2015 court date was placed into the case notes associated with his two tickets. (St. Defs. SMF ¶ 35).

On August 7, 2015, Plaintiff returned to the Newark Municipal Court and showed a written note to Officer Vazquez which said: "May I please know if my sign language interpreter is here?" (St. Defs. SMF ¶ 37). In response, Officer Vazquez, who was close enough that Plaintiff could read his lips, told Plaintiff, "you need to pay attention because I know you could hear me." (St. Defs. SMF ¶ 38). A different officer took Plaintiff's note and "never came back." (St. Defs. SMF ¶ 39). Plaintiff then sat in the courtroom for three hours, unsure if an interpreter was available or was going to show up. (St. Defs. SMF ¶ 40). Eventually, Plaintiff was asked to approach the presiding judge, Municipal Judge Michael Hackett. (St. Defs. SMF ¶ 41). The prosecution

indicated to Judge Hackett that it was not ready to proceed, because an ASL interpreter and the police officer who issued the tickets were both not present. (St. Defs. SMF ¶ 42). Accordingly, Judge Hackett dismissed the case pertaining to Plaintiff's tickets for lack of prosecution. (St. Defs. SMF ¶ 43). Officer Vazquez exchanged hand written notes with Plaintiff to communicate that his case was dismissed and that the tickets were gone. (St. Defs. SMF ¶ 44).

It is undisputed that Plaintiff qualified for an ASL interpreter. (St. Defs. SMF ¶ 2). Mr. James Simpson, who was the Director of the Newark Municipal Court, investigated Plaintiff's claims.[2] (St. Defs. SMF ¶¶ 45–46). At the conclusion of his investigation, Ms. Henderson was suspended for one day, and the Newark Municipal Court implemented new protocols for processing ASL interpreter requests received through the call center. (St. Defs. SMF ¶¶ 47–51). This new procedure requires call center personnel to complete and submit "Certified Court Interpreter Request Forms," which is the same form used to process in-person interpreter requests. (St. Defs. SMF ¶ 51).

After his municipal court case was dismissed, Plaintiff brought this action against Defendants. (ECF No. 1). In his Amended Complaint, Plaintiff asserts the following claims: (I) Violations of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*, against all Defendants; (II) Violations of Section 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794, against all Defendants; and (III) Violations of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. §§ 10:5-1, *et seq.*, against City Defendant. (ECF No. 13 ("FAC") ¶¶ 50–82). Plaintiff seeks a declaratory judgment finding that all Defendants have subjected Plaintiff to unlawful discrimination in violation of the ADA and RA and that City Defendant also subjected Plaintiff to discrimination in violation of NJLAD. (FAC at p. 10–11). Plaintiff also seeks to enjoin

---

[2] Mr. Simpson's investigation was prompted by the commencement of this action. (St. Defs. SMF ¶ 46).

Defendants from implementing any policy or procedure "that denies deaf or hard of hearing individuals meaningful access to and full and equal enjoyment of Defendant's facilities or programs." (FAC at p. 11). Additionally, Plaintiff requests that Defendants be ordered to develop and implement a policy prohibiting future discrimination and ensuring that Defendants will consider the communication needs of deaf individuals, and to train all their employees about the rights of individuals who are deaf or hard of hearing. (FAC at p. 11). Finally, Plaintiff requests compensatory damages pursuant to the ADA, RA, and NJLAD; punitive damages pursuant to NJLAD; reasonable costs and attorneys' fees; and any other relief the Court finds appropriate. (FAC at p. 11).

## II. LEGAL STANDARD

Summary judgment is appropriate when, drawing all reasonable inferences in the non-movant's favor, there exists no "genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "[T]he moving party must show that the non-moving party has failed to establish one or more essential elements of its case on which the non-moving party has the burden of proof at trial." *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 424 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

The Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party. *See Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). If a reasonable juror could return a verdict for the non-moving party regarding material disputed factual issues, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 249 ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

# III.   ANALYSIS

## A. State Defendants

Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.   The term "public entity" is defined as "any State or local government" and includes "any department, agency, special purpose district, or other instrumentality of a State . . . or local government." 42 U.S.C. § 12131(1)(A)–(B).   The United States Supreme Court has found that Title II of the ADA abrogates state sovereign immunity. *United States v. Georgia et al.*, 546 U.S. 151, 159 (2006); *Tenn. v. Lane*, 541 U.S. 509, 531 (2004).

Similar to the ADA, the RA states that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).   Under the RA, "program or activity" means the operations of "a department, agency, special purpose district, or other instrumentality of a State or of a local government" or "the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government." *Id.* § 794(b)(1).   For a claim under either the ADA or RA, Plaintiff must show he: "(1) has a disability; (2) was otherwise qualified to participate in a [public] program; and (3) was denied the benefits of the program or was otherwise subject to discrimination because of [his] disability." *Stone v. N.J. Admin. Office of the Courts*, 557 F. App'x 151, 153–54 (3d Cir. 2014)

(quoting *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F .3d 176, 189 (3d Cir. 2009)).[3]

Here, State Defendants concede that Plaintiff was entitled to an interpreter. (St. Defs. SMF ¶ 2). In their brief, State Defendants assume, without conceding, that Plaintiff can show a *prima facie* case for a violation under the ADA and RA. (ECF No. 76-1 at 12 n.2). Furthermore, State Defendants do not raise sovereign immunity in their brief and recognize that State and local government employers can be vicariously liable for their employee's ADA and RA violations. (*Id.* at 6). Instead, State Defendants advance two arguments: (i) that the Newark Municipal Court is not a "program" provided by the State Defendants; and (ii) that the Newark Municipal Court employees are not employees of the state in order for State Defendants to be vicariously liable for their ADA and RA violations.[4] (*Id.* at 5–6). As explained below, the Court is persuaded by these arguments and grants State Defendants' Motion for Summary Judgment.

First, the Newark Municipal Court is not a "program" provided by the State Defendants under New Jersey state law. This is because State Defendants do not establish, fund, provide resources to, maintain, or direct the day-to-day operations of municipal courts in New Jersey, like the Newark Municipal Court. *See* N.J.S.A. 2B:12-1 (explaining that municipal courts are established, maintained, and directed solely by the municipality). Plaintiff argues that the State Defendants retain some control over the Newark Municipal Court because the municipal courts are part of the state court system and follow the State Defendants' "disability accommodation policies." (ECF No. 87 at 2–3). The Court is not convinced by this argument. Even if the Newark

---

[3] The legal principles governing the ADA and RA are generally the same, with limited exceptions. *CG v. Pennsylvania Dep't of Educ.*, 734 F.3d 229, 235 (3d Cir. 2013). One of these exceptions is the fact that the RA also requires the allegedly discriminating entity to receive federal funding. *Id.* at 235 n.10 (citations omitted).

[4] State Defendants raise a third argument that, in the event they are found to be liable under the ADA and RA, Plaintiff is not entitled to compensatory damages or injunctive relief. (ECF No. 76-1 at 12, 16). However, because the ADA and RA claims do not apply to State Defendants, the Court need not address this third argument.

Municipal Court follows some policies set by the State Defendants, interpreter services are made available and provided by the Newark Municipal Court, not State Defendants, (St. Defs. SMF ¶ 55). *See Chisholm v. McManimon,* 275 F.3d 315, 324 (3d Cir. 2001); *see also Harvard v. State,* 2016 N.J. Super. Unpub. LEXIS 1559 at *40 (Law Div. June 29, 2016) ("The holding in *Chisolm* stemmed from the fact that . . . interpreter services are an administrative, county function"). Therefore, even when viewing all facts in a light most favorable to Plaintiff, it is clear that access to the Newark Municipal Court is not a program provided by State Defendants.

Second, State Defendants have carried their burden in showing that the Newark Municipal Court employees are not employees of the state for vicarious liability purposes. Though the Third Circuit has yet to address the issue, several other courts have held that an employer can be vicariously liable for its employee's ADA and RA violations. *See, e.g., T.W. ex rel. Wilson v. Sch. Bd. of Seminole Cty.,* 610 F.3d 588, 604 (11th Cir. 2010); *Delano-Pyle v. Victoria Cty.,* 302 F.3d 567, 574–75 (5th Cir. 2002). Here, several employees and judges of the Newark Municipal Court can be implicated for failing to provide Plaintiff with an ASL interpreter, including, most notably, the municipal court administrator Ms. Henderson. (St. Defs. SMF ¶¶ 22, 29, 32). However, these individuals are employees of the county, not the state, under New Jersey law. *See* N.J.S.A. 2B:12-10(a) ("A county or municipality shall provide for an administrator and other necessary employees for the municipal court and for their compensation."). Municipal court judges are also considered part of the county, and not the state. *See Id.* at 2B:12-7 ("[J]udges of municipal courts shall be paid annual salaries set by ordinance or resolution of the counties or municipalities establishing the court."). Because both the ADA and RA apply to programs provided by a public entity, and because the Newark Municipal Court and its employees are not provided or employed by State

Defendants, State Defendants cannot be held liable for the ADA and RA claims alleged by Plaintiff. Therefore, the Court grants State Defendants' Motion for Summary Judgment.

### B. City Defendants

Plaintiff also brings claims against City Defendant under the ADA, RA, and NJLAD. (*See generally* FAC). As stated above, a claim under the ADA or RA requires Plaintiff to have a disability, otherwise qualify to participate in a public program, and have been denied the benefits of that program or have been subject to discrimination because of his disability. *Stone*, 557 F. App'x at 153-54 (quoting *Chambers ex rel.*, 587 F .3d at 189). Pursuant to NJLAD, it is "unlawful discrimination" for "any owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation directly or indirectly to refuse, withhold from or deny to any person any of the accommodations, advantages, facilities or privileges thereof, or to discriminate against any person in the furnishing thereof . . . on account of . . . disability." N.J.S.A. 10:5-12(f)(l); *see also State v. P.E.*, 284 N.J. Super. 309, 316 (Ch. Div. 1994) (noting that under NJLAD "the courts are required to ensure equal access"). In *Stone*, the Third Circuit noted that, "[b]ecause the NJLAD 'relies on the same analytical framework' as the ADA, claims under it can be addressed alongside those under the ADA." 557 F. App'x at 154 (quoting *McNemar v. Disney Store, Inc.*, 91 F.3d 610, 618 (3d Cir. 1996), *abrogated on other grounds by Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 780 n.4 (3d Cir. 2001)).

City Defendant first argues that Plaintiff has not met the standards for the various statutes because (1) the Newark Municipal Court is a separate entity and (2) Plaintiff was not denied any right because he had access to the court. (ECF No. 78 at 1–2). Unlike State Defendants, City Defendant has failed to carry its burden for summary judgment. First, to find that City Defendant is separate from the Newark Municipal Court would be contrary to the facts in the record and New

Jersey state law, which indicates that a municipal court is provided by a municipality. *See* N.J.S.A. 2B:12-1 (explaining that municipal courts are established, maintained, and directed solely by the municipality). Furthermore, Newark Municipal Court employees, who perform the administrative service of obtaining an interpreter, are provided by City Defendant. *See Id.* at 2B:12-10(a) ("A county or municipality shall provide for an administrator and other necessary employees for the municipal court and for their compensation."). Therefore, a reasonable jury could find that the Newark Municipal Court was a program of City Defendant, or alternatively that City Defendant is vicariously liable for the violations committed by the Newark Municipal Court's employees.

City Defendant's second argument is that Plaintiff was not deprived of any right because he had access to the court, as indicated by the fact that his traffic tickets were eventually resolved. (ECF No. 78 at 8–12). To even suggest that Plaintiff was provided "reasonable accommodation" or that his municipal court case ran its "natural course" fails to appreciate the uncontested facts in the record. For example, Plaintiff was never provided an interpreter despite multiple requests, was accused of faking his disability, was subjected to pleading "not guilty" by pointing at a piece of paper, and was told to sign the "Hudson Notice" despite stating he needed an interpreter present. (St. Defs. SMF ¶¶ 14, 17, 22, 26–28, 38, 40). Just because the municipal court case was ultimately dismissed for lack of prosecution does not by any means translate to Plaintiff having the same access to the court as someone without a disability.[5] *Lane*, 541 U.S. at 532 ("[A] State must afford to all individuals a meaningful opportunity to be heard in its courts.") (citations and quotations omitted). At the very least, because Plaintiff asserts that the lack of an interpreter denied him "the right to effectively communicate," (ECF No. 86 at 7), there is a material dispute as to whether

---

[5] As stated above, the case was dismissed because the prosecution's witness and an interpreter were not present at the second hearing. (St. Defs. SMF ¶ 42).

Plaintiff was denied access to the court. Therefore, the Court rejects City Defendant's second argument.

City Defendant then argues that, even if it can be held liable under the statutes, Plaintiff is not entitled to compensatory damages or injunctive relief. (ECF No. 78 at 2). The Court addresses each of these arguments separately and rejects them both.

Compensatory relief cannot be given to a plaintiff under the ADA or RA without a showing of intentional discrimination. *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 262 (3d Cir. 2013). To show intentional discrimination, the Third Circuit uses a deliberate indifference standard and applies a two-prong test: "(1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood." *Id.* at 263 (citations and quotations omitted). "Deliberate indifference does not require a showing of personal ill will or animosity toward the disabled person." *Id.* (citations and quotations omitted). City Defendant argues that the first prong is not met because there is no evidence that the Newark Municipal Court was on notice that Plaintiff would be deprived access to an ASL interpreter. (ECF No. 78 at 15). As for the second prong, City Defendant argues that Ms. Henderson's failure to provide Plaintiff with an ASL interpreter was "purely an oversight." (*Id.*; St. Defs. SMF ¶ 32). The Court disagrees with Defendant because there are sufficient facts to find that the Newark Municipal Court was on notice, based on Plaintiff's repeated requests for an ASL interpreter to multiple court employees. (ECF No. 78 at 11–13; St. Defs. SMF ¶¶ 20, 23). Additionally, the second prong can be met based on the undisputed fact that Ms. Henderson failed to provide Plaintiff with an interpreter despite being present at the July 21, 2015 hearing and leaving a note for herself that an interpreter was needed. (St. Defs. SMF ¶¶ 30–32). Therefore, a reasonable jury could find that the Newark Municipal Court, and by extension City Defendant, acted with deliberate indifference.

The final issue for the Court to consider is whether Plaintiff has standing for injunctive relief. "[I]n 'ADA cases, courts have held that a plaintiff lacks standing to seek injunctive relief unless he alleges facts giving rise to an inference that he will suffer future discrimination by the defendant.'" *Pryor v. NCAA*, 288 F.3d 548, 561 (3d Cir. 2002) (citation omitted). In his Amended Complaint, Plaintiff seeks, among other things, injunctive relief enjoining City Defendant from implementing any policy or procedure "that denies deaf or hard of hearing individuals meaningful access to and full and equal enjoyment of Defendant's facilities or programs." (FAC at p. 11). Additionally, Plaintiff wants the Court to order City Defendant to develop and implement a policy prohibiting future discrimination and ensuring that Defendants will consider the communication needs of deaf individuals. (*Id.*).

City Defendant argues that Plaintiff lacks standing to seek injunctive relief because the Newark Municipal Court already implemented new procedures, making it unlikely that Plaintiff will be deprived of an interpreter in the future. (ECF No. 78 at 16). It is undisputed that the Newark Municipal Court implemented a new policy following the events of this case. (St. Defs. SMF ¶¶ 47–51). However, Plaintiff correctly points out that "the mere voluntary cessation of a challenged practice does not render a case moot." (ECF No. 86 at 15). City Defendant has not asserted any facts which show that the new policy sufficiently removed the impediments to Plaintiff's access to an ASL interpreter. (*See generally* ECF No. 78). Additionally, Plaintiff may appear before the Newark Municipal Court again in the future, as evidenced by the fact that Plaintiff has already received another traffic ticket. (ECF No. 86-1 ¶ 27). Viewing these facts in a light most favorable to Plaintiff, the Court determines that it is not appropriate to dismiss Plaintiff's request for injunctive relief at this time. Based on these findings, City Defendant's Motion for Summary Judgment is denied.

## IV.    CONCLUSION

For the aforementioned reasons, the Court hereby grants State Defendants' Motion for Summary Judgment and denies City Defendant's Motion for Summary Judgment. An appropriate Order follows this Opinion.

Dated: May 11th, 2018.

JOSE L. LINARES
Chief Judge, United States District Court