NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHINEDU IBRAHIM ALI,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF NEWARK, *et al.*,<br><br>Defendants. | Civil Action No.: 15-8374 (JLL)<br><br>**OPINION** |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of Plaintiff Chinedu Ibrahim Ali's request for equitable relief in the form of twelve changes to the Newark Municipal Court system's policies and procedures for accommodating participants with hearing disabilities. (ECF No. 141). Defendant City of Newark ("the City") has opposed the request. (ECF No. 142). For the following reasons, the Court denies Plaintiff's request as moot.

## I. BACKGROUND

The facts underlying this dispute have been described by the Court on several occasions, including in the Court's Opinion denying the City's motion for summary judgment. (ECF No. 96). Accordingly, and in the interests of judicial economy, the Court includes an abbreviated statement of the factual and procedural history to the extent such background is relevant to the instant request.

In July of 2015, Plaintiff, an individual with a hearing disability, became aware that he had

two parking tickets. (ECF No. 115 at 3). Using Relay Service, a text-based service provided by Sprint Mobile IP, Plaintiff contacted a Newark Municipal Court customer service representative to schedule a hearing, and informed the representative that he was deaf and would require an American Sign Language ("ASL") interpreter to be present. (ECF No. 115 at 3; ECF No. 96 at 2). The representative saved a note in Plaintiff's case file indicating his need for an ASL interpreter. (ECF No. 96 at 2). However, when Plaintiff arrived at his hearing on July 21, 2015, no ASL interpreter was present, and Plaintiff was forced to communicate with Municipal Court Judge Vanessa Williams-Powell and court staff using a combination of writing, gesturing, and lip-reading. (ECF No. 96 at 2–4). Because of the absence of an interpreter, Plaintiff's hearing was adjourned to August 7, 2015, and Judge Williams-Powell directed that an ASL interpreter be reserved for that hearing. (ECF No. 141-1 at 2). Plaintiff used Relay Service to contact the Newark Municipal Court a second time to request an ASL interpreter for his August hearing, and a customer service representative again noted Plaintiff's request in his case file. (ECF No. 115 at 3). Again, however, when Plaintiff appeared for his hearing on August 7, 2015, no interpreter was present. (ECF No. 115 at 3). Plaintiff's two parking tickets were then dismissed at the prosecutor's request. (ECF No. 115 at 4).

In November of 2015, Plaintiff sued the City, the State of New Jersey, and the Administrative Office of the Courts of New Jersey[1] for violations of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*, Section 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794, and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5–1 *et seq.*, seeking injunctive relief and damages for emotional suffering. (ECF No. 1).

---

[1] The Court has since dismissed the State of New Jersey and the Administrative Office of the Courts of New Jersey as Defendants, finding that the Newark Municipal Court was not a "program" provided by the State and that Newark Municipal Court employees were not employees of the State for purposes of vicarious liability under the relevant statutes. (ECF No. 96 at 8–10).

2

Following the filing of this lawsuit, James Simpson, then Director of the Newark Municipal Court, commenced an investigation into the circumstances underlying Plaintiff's claims. (ECF No. 96 at 5). Although the Municipal Court had a contract in place with CQ Fluency, an agency that provides ASL interpreting services, Mr. Simpson's investigation revealed that the Municipal Court failed to contact an ASL interpreter for either of Plaintiff's scheduled hearings. (ECF No. 141-1 at 2–3). The then-operative Municipal Court policy for arranging interpreter services required Court Administrators to provide a "Certified Court Interpreter Request Form" to Municipal Court employee Thilita Brown-Adamson, who would then contact the agency to schedule the interpreter. (ECF No. 141-1 at 3). However, Plaintiff alleges that there were no procedures in place to ensure that an individual's request for an interpreter placed through the customer service call center would reach a Court Administrator in the first place. (ECF No. 141 at 2). Sandra Henderson, the Court Administrator assigned to Judge Williams-Powell at the time of Plaintiff's first hearing, admitted that she did not review the case notes in Plaintiff's file and did not have a practice of reviewing case notes in general. (ECF No. 141-1 at 2; ECF No. 96 at 2).

Mr. Simpson's investigation concluded that "the court administrator neglected to follow established protocol for ordering interpreters" and suspended Ms. Henderson for one day. (ECF No. 141-1 at 2, 3). On December 7, 2015, Newark Municipal Court Chief Judge Victoria F. Pratt issued an internal memorandum updating the Municipal Court's procedures for arranging ASL interpreters. (ECF No. 141-2). The new policy required customer service representatives who receive requests for ASL interpreters to: "1) Make a notation in the comments section of the screen; and 2) Complete and submit [a] 'Certified Court Interpreter Request Form' to Thilita Brown Adamson," a copy of which Judge Pratt attached to the memorandum. (ECF No. 141-2). The new policy therefore shifts responsibility for contacting Ms. Brown-Adamson (who then schedules the

interpreter) from a Court Administrator to customer service representatives, who receive interpreter requests directly from Municipal Court participants, intending thereby to alleviate the breakdown that caused the oversight in Plaintiff's case.

On December 22, 2017, the City moved for summary judgment, arguing that it was entitled to judgment as a matter of law on Plaintiff's claims for compensatory relief and that Plaintiff lacked standing to pursue injunctive relief because the aforementioned policy changes rendered Plaintiff's claims moot. (ECF Nos. 77–78). The Court rejected both arguments, denying the City's motion for summary judgment on May 11, 2018, (ECF No. 96), and denying the City's motion for reconsideration on August 7, 2018, (ECF No. 109). The parties later settled Plaintiff's claims at a settlement conference held on February 25, 2019, the eve of trial. (ECF No. 139). As part of that settlement, the parties agreed to submit briefing on the issue of appropriate equitable relief and to leave that issue for the Court's determination, which is the matter presently before the Court. (ECF No. 139; ECF No. 141 at 1).

Plaintiff argues that, while the policy change implemented by the Municipal Court's December 7, 2015 memorandum "addresses a gap that may *partially* be to blame for [the City's] failure to provide [Plaintiff] with an interpreter at his first court date," the revision ultimately "fails to address the systemic lack of awareness and proper training on how to address and evaluate the unique communication needs of deaf individuals." (ECF No. 141 at 2). Plaintiff maintains that the changes fail to address the fact that, under the City's current policy, "only certain members of court staff are tasked with ensuring that interpreter requests are properly addressed," a failure which "leav[es] gaps in the system for similarly-situated deaf and hard-of-hearing individuals to face discrimination on the basis of their disability." (ECF No. 141 at 2–3). As a result, Plaintiff seeks an order directing the City to implement a set of twelve policies or procedures. (*See* ECF

No. 141 at 4–5). The City responds generally that all requested changes have already been implemented either by the City or by the State of New Jersey, and that therefore Plaintiff's requests for relief should be denied as moot. (ECF No. 142 at 1–3). The City's response is supported by a certification from Newark Municipal Court Director Denise Bivins (successor to Mr. Simpson), who has personal knowledge of current policy and practice. (ECF No. 142-1 ("Bivins Cert.")). The Court will address each of Plaintiff's twelve requests in turn.

## II. LEGAL STANDARD

Title II of the ADA, Section 504 of the RA, and the NJLAD prohibit discrimination by public entities based on a person's disability. 42 U.S.C. § 12132 (ADA Title II); 29 U.S.C. § 794 (RA Section 504); N.J.S.A. 10:5-12(f) (NJLAD). Courts apply the same framework when addressing disability discrimination claims brought under these three statutes.[2] *Chisolm v. McManimon*, 275 F.3d 315, 324 n.9 (3d Cir. 2001). The Court therefore looks to Title II of the ADA and related federal regulatory guidance in considering Plaintiff's claims for equitable relief. *Id.* ("[W]e will confine our discussion to the ADA with the understanding that the principles will apply equally to the [RA] and NJLAD claims.").

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. ADA implementing regulations "require public entities to take 'appropriate steps' to ensure that communication with a disabled person is as effective as communication with others." *Chisolm*, 275 F.3d at 325 (quoting 28 C.F.R. § 35.160(a)). This includes the obligation to "furnish

---

[2] Section 504 of the RA applies only to public entities that receive federal financial assistance. 29 U.S.C. § 794(a).

appropriate auxiliary aids and services where necessary to afford individuals with disabilities . . . an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." 28 C.F.R. § 35.160(b)(1).

> In determining what type of auxiliary aid and service is necessary, a public entity shall give primary consideration to the requests of the individual with disabilities. [28 C.F.R. §] 35.160(b)(2). For deaf and hearing-impaired persons, auxiliary aids and services include:
>
>> Qualified interpreters, notetakers, transcription services, written materials, telephone handset amplifiers, assistive listening devices, assistive listening systems, telephones compatible with hearing aids, closed caption decoders, open and closed captioning, telecommunications devices for deaf persons (TDD's), videotext displays, or other effective methods of making aurally delivered materials available to individuals with hearing impairments.
>
> 28 C.F.R. § 35.104(1). The Appendix to the regulations explains that:
>
>> [A]lthough in some circumstances a notepad and written materials may be sufficient to permit effective communication, in other circumstances they may not be sufficient. For example, a qualified interpreter may be necessary when the information being communicated is complex, or is exchanged for a lengthy period of time. Generally, factors to be considered in determining whether an interpreter is required include the context in which the communication is taking place, the number of people involved, and the importance of the communication.
>
> 28 C.F.R. Pt. 35, App. A.

*Chisolm*, 275 F.3d at 325–26. "[A] public entity may be relieved of its duty [to furnish accommodations to participants with disabilities] only upon proving that, considering all funding and operating resources available, the proposed action would result in either (1) a fundamental alteration in the nature of the service, program or activity or (2) undue financial or administrative burdens." *Id.* at 325 (citing 28 C.F.R. § 35.164). "A public entity claiming the exemption must also take alternative action not resulting in such an alteration or burden, but nevertheless ensuring,

6

to the maximum extent possible, that disabled individuals receive the public entity's benefits and/or services." *Id.*

### III. ANALYSIS

1. **Request No. 1**

   > The City of Newark will conduct an assessment of the communication needs of deaf and hard of hearing participants at the Newark Municipal Court to determine which auxiliary aids and services are necessary, taking the preference of the participant into primary consideration.

(ECF No. 141 at 4). The City argues that the protocol for assessing individuals' communication needs is handled by the State, which has already made appropriate policy changes. (ECF No. 142 at 1). This Court previously dismissed the State as a defendant in this action, despite the fact that the Municipal Court adheres to State Judiciary ADA accommodation policies, reasoning that the Newark Municipal Court is not a State program under N.J.S.A. 2B:12-1, and that interpreter services are made available and provided by the Municipal Court, not the State. (ECF No. 96 at 8-9). Nevertheless, current State policies provide relevant context to the present inquiry, because it is that policy on which Newark Municipal Court personnel are trained. (*See* Bivins Cert. ¶ 13).

Following the investigation into the circumstances underlying Plaintiff's case, former Municipal Court Director James Simpson reported his findings to the State in a letter to Essex County Municipal Presiding Judge Anthony J. Frasca. (ECF No. 141-1). The State has since "revised its training to include [Plaintiff's] case as an example of how services can be improved and the importance of giving primary consideration to a litigant's preferences." (ECF No. 142 at 1). The current publicly-available State Judiciary ADA policy lists the following examples of accommodations that the Judiciary can provide:

- Interpreters: American Sign Language (ASL), Certified Deaf Interpreters

(CDI), oral interpreters, tactile interpreters for people who are deaf and blind[,] and transliterators

- Computer Aided Real-time Transcription (CART) services, text in alternative formats, such as Braille, audio access[,] and Assistive Listening Devices (ALD)
- Readers and notetakers
- Alternative seating arrangements and locations
- Modified schedules

*The N.J. Judiciary's Title II ADA Procedures for Access to the Courts by Individuals with Disabilities* (Jan. 2019), at 2, https://www.njcourts.gov/forms/10775_ada_titleII.pdf?c=KZ8. Participants are invited to communicate their requests to court personnel and/or local appointed Title II ADA Coordinators via the NJ Relay Service, and recommends making a request two weeks before a court appearance. *Id.* at 2–3, 5.

With respect to the City's provision of services in accordance with these policies, the City argues, and the Court agrees, that the Newark Municipal Court "already takes a participant's accommodation preferences into primary consideration." (ECF No. 142 at 1). As will be addressed below with respect to Request Nos. 2, 3, and 5, the City changed its internal procedures following Plaintiff's hearings to ensure that individual requests for auxiliary aids, including ASL interpreters, are accommodated in a timely fashion so that they will be available for an individual's first appearance. (ECF No. 142 at 2; *see also* Bivins Cert. ¶¶ 14–16). Updates to the Newark Municipal Court protocol following its failure to secure an interpreter for Plaintiff's hearings are geared toward ensuring that requests made by court participants via the call center or a customer service representative are honored. (ECF No. 141-2). The Court is therefore satisfied that the Municipal Court will "give primary consideration to the requests of individuals with disabilities" when considering the type of auxiliary aid or service necessary, as requested by Plaintiff and as required by 28 C.F.R. § 35.160(b)(2).

## 2. Request Nos. 2–3 and 5

> The City of Newark will provide a qualified ASL Interpreter(s), when necessary, for all deaf and hard of hearing participants the Newark Municipal Court, for all court appearances, including first appearances.
>
> The City of Newark will provide ASL Interpreter(s) or another auxiliary aid or service, whichever is necessary, to ensure effective communication at the Newark Municipal Court.
>
> The City of Newark will implement a protocol to secure timely ASL interpreting services for participants at the Newark Municipal Court, where necessary and appropriate.

(ECF No. 141 at 4). The City responds that the "Newark Municipal Court is already committed to providing qualified ALS Interpreter(s), when necessary, for all deaf and hard of hearing participants in the Newark Municipal Court, . . . for all court appearances, including first appearances," (ECF No. 142 at 2), and that it "has already implemented a protocol to secure timely ASL interpreting services," (ECF No. 142 at 3). The City "continues to fund a contract with CQ Interpreters," which offers interpretive services, including ASL interpreters. (Bivins Cert. ¶ 23).

More importantly, the City cites to its change in policy following the Municipal Court's failure to provide an interpreter for Plaintiff. (ECF No. 142 at 2; *see also* ECF No. 141-2). As a result of this change, customer service representatives, rather than Court Administrators, are "tasked with initiating the process to obtain ASL interpreters," and representatives have been given access to interpreter request forms in the call center. (ECF No. 142 at 2; *see also* Bivins Cert. ¶¶ 14–16). The purpose of this shift in responsibility was to ensure the availability of interpreters at the first hearing of an individual who requests one in advance via the call center. (ECF No. 142 at 2). This change adequately fills the gap that caused the failure to secure an interpreter for Plaintiff's hearings. Rather than merely making a notation in a case file that no one will see, customer service representatives are now responsible for setting in motion the scheduling of the interpreter. Indeed, since Plaintiff's hearings in 2015, "the Newark Municipal Court has not

received any complaints from deaf or hard of hearing individuals, concerning the provision of accommodations." (Bivins Cert. ¶ 24). Accordingly, the Court is satisfied that the City is committed to and has an established protocol for providing ASL interpreters in a timely fashion where necessary in the future. These requests are therefore denied as moot.

### 3. Request No. 4

> The City of Newark will take steps to provide training to relevant employees of the Newark Municipal Court, including, but not limited, judges, court officers, court administrators, and court clerks, relative to the policies and procedures addressed herein. Said training will include the circumstances under which interpretation services will be provided and how such services shall be secured when needed or required. All such individuals shall also be expressly informed that it is their responsibility to comply with these policies and procedures.

(ECF No. 141 at 4). The City responds again that it is not responsible for State-level ADA training protocols, but that it nevertheless takes steps to ensure its employees understand and comply with their obligations under internal and State policy. (ECF No. 142 at 2). Following the incidents involving Plaintiff, "all judges, court administrators, and managerial staff, including [Ms. Bivins], were retrained by the State on the applicable State ADA policies and procedures," which were revised to include reference to Plaintiff's case, such that Municipal Court staff "might be more sensitive [to] and more aware of the needs of deaf individuals, miscommunications with those individuals, and accommodation of those individuals." (Bivins Cert. ¶ 11–12). The "updated training regimen continues to be provided to Newark Municipal Court staff by the State, including new judges and managerial staff." (Bivins Cert. ¶ 13). In order to provide ongoing support to current staff,[3] Ms. Bivins conducts "weekly meetings with the court administrators to review their

---

[3] To the extent Plaintiff is concerned about off-the-record conduct by Judge Williams-Powell and a court officer at Plaintiff's first hearing, those individuals, as well as Ms. Henderson, are no longer employed by the Municipal Court. (Bivins Cert. ¶¶ 6–10).

10

responsibilities under internal court protocols," including the new protocol for procuring ASL interpreters, as well as "protocols intended to implement State policies and procedures." (Bivins Cert. ¶ 17). The City further assures the Court that "[a]ll managerial staff, inside the courtroom and out, are aware of their responsibility to initiate the process for requesting interpreting services, and all non-managerial staff are aware of their responsibility to notify managerial staff of requests for ASL interpreters." (Bivins Cert. ¶ 18). For those reasons, and for the reasons stated above with respect to Request Nos. 2, 3, and 5, the Court is satisfied that Newark Municipal Court personnel receive adequate training on their responsibilities with respect to the provision of interpretive services, and accordingly denies this request as moot.

### 4. Request Nos. 6–8

> The City of Newark will comply with its obligations to ensure effective communication to deaf and hard of hearing individuals at the Newark Municipal Court in accordance with Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.
>
> The City of Newark will comply with its obligations to ensure meaningful access to the services of the Newark Municipal Court to all deaf and hard of hearing individuals as required under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.
>
> The City of Newark will not discriminate against any individual on the basis of their disability of deafness.

(ECF No. 141 at 4). The City responds that it "is already complying [with] any obligations it may have under Title II of the ADA and Section 504 of the [RA];" namely, it "finances the contract for interpreters, including ASL interpreters, and other auxiliary aids," and it "authorizes personnel requests from the Newark Municipal Court for discipline." (ECF No. 142 at 3). The Court finds that these requests for relief are mere conclusory recitations of the City's existing legal obligations under the ADA and RA. Accordingly, these requests are denied.

5. **Request No. 9**

> The City of Newark shall post notices/signs in public areas throughout the Newark Municipal Court notifying individuals of their rights under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973. Such notices shall include the name and phone number of the City of Newark's ADA/Rehabilitation Act Coordinator.

(ECF No. 141 at 4). The City responds that the Municipal Court "already posts [ADA] signs and notices in each of [its] courtrooms," attaching photographs of the relevant signage. (ECF No. 142 at 3; ECF No. 142-3). The signs are titled "Notice to the Deaf & Hard of Hearing" and include the following notice: "You have the right to a sign language interpreter or other reasonable accommodation if one is required for you to effectively communicate in Court. If you require a sign language interpreter or other accommodation to communicate, please let us know." (ECF No. 142-3 at 2–3, 8–9). The signs also include the International Symbol for Access for Hearing Loss and the International Symbol for Sign Language. These signs are posted throughout the Municipal Court, where there is "generally one notice on each wall." (Bivins Cert. ¶ 19; *see also* ECF No. 142-3 at 5–6, 9–10). The Municipal Court also makes available accommodation appeals forms in every courtroom, which include the following language:

> The Judiciary will provide a reasonable accommodation for court users with a disability, enabling them to access and participate in court proceedings, programs, services and activities, provided that the accommodation does not fundamentally alter the nature of a judiciary program, service, or activity or impose an undue hardship upon the Judiciary.
>
> **NOTE:** You have the right to pursue whatever remedies are available under state law (New Jersey Division on Civil Rights) and federal law (U.S. Department of Justice). You should be aware that there are time limits for filing claims with outside agencies. Check with the outside agency for its filing deadlines.

(ECF No. 142-5 at 3). In the event that a participant seeks further information, the "name and phone number of the Newark Municipal Court's relevant managerial personnel, including the Director, is publicly available on the State's website and on the City's website." (ECF No. 142 at

12

3–4). The State Judiciary Title II ADA Policy, available online, also provides an address and phone number for a Local Title II Coordinator for Essex County. *N.J. Judiciary's Title II ADA Procedures*, at 5. The Court is satisfied that the signage currently on display in the Newark Municipal Court, along with the information provided by the accommodation appeal forms, adequately apprises participants of their rights to receive appropriate accommodations under the law. Accordingly, this request is denied as moot.

### 6. Request No. 10

> The City of Newark shall appoint a Coordinator to ensure compliance with its obligations under Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

(ECF No. 141 at 4). The City responds that it already has an ADA Coordinator—Newark Municipal Court Director Denise Bivins. (ECF No. 142 at 4; Bivins Cert. ¶ 17). Ms. Bivins conducts "weekly meetings with the court administrators to review their responsibilities under internal court protocols, [and] protocols intended to implement State policies and procedures." (Bivins Cert. ¶ 17). As the City has already appointed an ADA Coordinator to cover the Municipal Court—the public entity at issue in Plaintiff's case—the Court denies this request as moot.

### 7. Request No. 11

> The City of Newark shall appoint a Grievance Officer and establish a grievance procedure for individuals to file grievances regarding the Newark Municipal Court's failure to provide necessary auxiliary aids and services.

(ECF No. 141 at 4). The City responds that Ms. Bivins is both ADA Coordinator and Grievance Officer, and that the Municipal Court already follows a grievance procedure. (ECF No. 142 at 4). The Municipal Court makes complaint forms and accommodation appeal forms available in all courtrooms. (Bivins Cert. ¶ 21–22). The accommodation appeal form invites Municipal Court

participants to "describe . . . why [they] believe [they] have been denied an effective ADA accommodation to access and/or participate in any court proceeding, judiciary program, service, or activity." (ECF No. 142-5 at 3). The form instructs participants to "contact the local Title II ADA coordinator" if they need help completing the form, and to "return [the] completed form to the local Title II ADA coordinator" for processing. (ECF No. 142-5 at 3). The form directs participants that the "[n]ame and contact information for the local Title II ADA coordinators can be found in the [State] Judiciary Title II ADA procedures for access to the courts by individuals with disabilities brochure or at njcourts.com." (ECF No. 142-5). This brochure, created by the State Judiciary and available online, provides contact information for Local Title II ADA Coordinators throughout the State, including for Essex County. *See N.J. Judiciary's Title II ADA Procedures*, at 5. Given the appointment of Ms. Bivins as Grievance Officer and the availability of the accommodation appeal form, the Court finds that the City has already established an adequate grievance procedure to render this request moot. The request is therefore denied.

8. **Request No. 12**

> In the event that a requested necessary ASL interpreter is not provided to a participant at the Newark Municipal Court, the City of Newark will undertake an investigation as to why such an interpreter was not provided, and will take necessary corrective measures based on such investigation.

(ECF No. 141 at 4–5). The City responds that the Municipal Court "already takes such investigations," (ECF No. 142 at 4), including the investigation into the circumstances underlying Plaintiff's lawsuit, which brought about the disciplinary action against Ms. Henderson, (ECF No. 142-2), and the change in procedure for scheduling interpreters, (ECF No. 141-2). The Court therefore concludes that, so long as the City continues to take such investigative action following complaints regarding insufficient hearing disability accommodations, this request is denied.

## IV. **CONCLUSION**

For these reasons, Plaintiff's request for equitable relief is denied. An appropriate Order accompanies this Opinion.

DATED: March 25th, 2019

JOSE L. LINARES
Chief Judge, United States District Court